UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

D'ARRIGO BROS CO. OF NEW YORK, INC. *et al.*,

                Plaintiffs,

-v-

JEFE PRODUCE LLC *et al.*,

                Defendants.

22 Civ. 119 (JPC)

ORDER GRANTING REQUEST FOR PRO BONO COUNSEL

JOHN P. CRONAN, United States District Judge:

      Defendant Jeung S. Lee has filed an Application for the Court to Request Pro Bono Counsel. Dkt. 34. For the following reasons, Lee's request that the Court seek *pro bono* counsel is granted for the limited purpose of representing Lee in connection with a settlement conference before Magistrate Judge Robert W. Lehrburger.

## I. Background

      This case arises under the Perishable Agricultural Commodities Act of 1930 ("PACA"), 7 U.S.C. § 499a *et seq. See* Dkt. 1 ("Complaint") ¶ 8. Plaintiffs, produce dealers, *id.* ¶¶ 3-5, allege that Defendant Jefe Produce LLC ("Jefe Produce"), also a produce dealer, *id.* ¶ 6, failed to pay for produce that Plaintiffs had sold and delivered to Jefe Produce, *id.* ¶¶ 9-17. The Complaint seeks both injunctive relief and damages, plus costs and attorneys' fees, from Jefe Produce and from Lee, Jefe Produce's sole member. *Id.* at 7-8. Simultaneously with filing the Complaint, Plaintiffs filed an emergency motion for a temporary restraining order, Dkt. 4, and a motion for a preliminary injunction, Dkt. 6, both pursuant to the provision of PACA establishing a statutory trust for the benefit of unpaid produce suppliers, 7 U.S.C. § 499e(c). Shortly thereafter, the Court entered a preliminary injunction that, *inter alia*, enjoins Defendants from transferring the assets of Jefe Produce that, under PACA, were placed in trust for Plaintiffs' benefit, and orders Defendants to

produce documents and records that would enable Plaintiffs to collect those funds. Dkt. 18. Roughly three months later, Plaintiffs moved for the Court to hold Defendants in civil contempt for failing to comply with that injunction. Dkts. 28-30. In a sworn declaration, Plaintiffs' counsel claimed that Lee had failed to cooperate in Plaintiffs' attempts to collect on Jefe Produce's accounts receivables, Dkt. 29 ¶¶ 11-12, and that he had failed to produce certain financial records, *id.* ¶ 14. In two responsive letters, Lee claimed that he had done his best to comply with the injunction but that due to his limited command of English and unfamiliarity with the American legal system, he had been unable to understand the obligations imposed on him by the Court's injunction. *See* Dkts. 37, 39. Plaintiffs' counsel replied in a sworn declaration renewing the request for Defendants to be held in contempt. Dkt. 40 at 6. Among other relief, Plaintiffs ask the Court to issue an order of civil contempt that would direct the United States Marshals Service to hold Lee in custody for the duration of his contempt. *See* Dkt. 30 at 6; Dkt. 40 at 6.

## II. Legal Standard

The *in forma pauperis* statute provides that the courts "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). Unlike in criminal cases, in civil cases, there is no requirement that courts supply indigent litigants with counsel. *Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986). Instead, courts have "broad discretion" when deciding whether to grant an indigent litigant's request for *pro bono* representation. *Id.* Even if a court does believe that a litigant should have a free lawyer, under the *in forma pauperis* statute, a court has no authority to "appoint" counsel, but instead may only "request" that an attorney volunteer to represent a litigant. *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 301-10 (1989). Moreover, courts do not have funds to pay counsel in civil matters. Courts must therefore grant applications for *pro bono* counsel sparingly, and with reference to public benefit, in order to

preserve the "precious commodity" of volunteer-lawyer time for those litigants whose causes are truly deserving. *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

In *Hodge*, the Second Circuit set forth the factors a court should consider in deciding whether to grant an indigent litigant's request for the Court to seek *pro bono* counsel. 802 F.2d at 60-62. Of course, the litigant must first demonstrate that he or she is indigent, for example, by successfully applying for leave to proceed *in forma pauperis*. The court must then consider whether the litigant's claim "seems likely to be of substance" – "a requirement that must be taken seriously." *Id.* at 60-61. If these threshold requirements are met, the court must next consider such factors as:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues[,] and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Id.* at 61-62; *see also Cooper*, 877 F.2d at 172 (listing the factors courts should consider, including a litigant's efforts to obtain counsel). In considering these factors, district courts should neither apply bright-line rules nor automatically deny the request for counsel until the application has survived a dispositive motion. *See Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Rather, each application must be decided on its own facts. *See Hodge*, 802 F.2d at 61.

### III. Discussion

Lee has filed an Application to Proceed *in Forma Pauperis*, which he prepared under penalty of perjury. Dkt. 35. Based on a review of Lee's financial information as presented in that Application, the Court concludes that Lee qualifies as indigent.

As a threshold matter, *Hodges* requires district courts considering whether to request appointment of *pro bono* counsel to determine whether the indigent's "position seems likely to be

of substance." 802 F.2d at 61. When the indigent is a plaintiff, this inquiry often focuses on whether the indigent is likely to prevail on the claims asserted in the complaint. Lee, however, is a defendant in this action. And, as indicated by the Court's decision to grant Plaintiffs' requested preliminary relief, the Court views Defendants as unlikely to succeed on the merits of this case. Nonetheless, at present the primary dispute between the parties concerns Defendants' compliance with the Court's preliminary injunction—in particular, whether their failure to comply merits a finding of contempt. And the Court views Lee's position with respect to that dispute likely to be of substance—namely, that his failures of compliance do not warrant a finding of contempt because they result from his difficulty with the English language and ignorance of American law. Thus, the threshold requirement for the appointment of *pro bono* counsel under *Hodges* is met. *See* 802 F.2d at 61.

While *Hodges* identifies a number of factors that may be relevant to a district court's decision whether to request counsel, it does not require "all, or indeed any, of the factors [to] be controlling in a particular case." *Id.* Instead, a district court may consider a wide range of factors, including "any special reason . . . why appointment of counsel would be more likely to lead to a just determination." *Id.* at 62. For three such reasons, securing counsel for Lee in this case for the limited purpose of settlement would likely "lead to a just determination." First, the legal issues this case presents are relatively complex. *See id.* (mentioning "the complexity of the legal issues" as a relevant factor). While in most cases plaintiffs seek only an award of damages, a form of relief that may be comprehended even by those without legal training, here Plaintiffs seek more complex forms of equitable relief that a non-lawyer would reasonably struggle to understand, particularly one who does not speak English natively. Second, because Lee's lack of understanding may be a primary cause of his lack of compliance, securing *pro bono* counsel may

prove atypically effective in resolving this dispute: once Lee better understands the nature of the obligations imposed by the Court's injunction, the parties may be able to resolve their disagreements through negotiation and settlement. Thus, securing counsel in this case is likely to "lead to a quicker and more just result by sharpening the issues and shaping examination." *Id.* at 61. Finally, the Court views the involvement of *pro bono* counsel as particularly desirable because Plaintiffs seek a finding of contempt that would entail Lee's incarceration. In the normal context in which a defendant's liberty is at stake—namely, in criminal cases—the right to counsel is secured by the U.S. Constitution. *See Gideon v. Wainwright*, 372 U.S. 335 (1963). And while the Supreme Court held in *Turner v. Rogers*, 564 U.S. 431 (2011), that "the Due Process Clause does not *automatically* require the provision of counsel at civil contempt proceedings to an indigent individual," *id.* at 448, it emphasized that the Clause requires some "alternative procedures that ensure a fundamentally fair determination of the critical incarcerated-related question," *id.* at 435, and further cautioned that its decision in *Turner* did not "address what due process requires in an unusually complex case where a defendant 'can fairly be represented only by a trained advocate,'" *id.* at 449 (quoting *Gagnon v. Scarpelli*, 411 U.S. 778, 788 (1973)). The Court accordingly concludes that requesting *pro bono* counsel for Lee is appropriate.

### IV. Conclusion

For the foregoing reasons, Lee's Application for the Court to Request Counsel is granted. The Court advises Lee that there are no funds to retain counsel in civil cases and the Court relies on volunteers. Due to a scarcity of volunteer attorneys, a lengthy period of time may pass before counsel volunteers to represent Lee. If an attorney volunteers, the attorney will contact Lee directly. There is no guarantee, however, that a volunteer attorney will decide to take the case,

and Lee should be prepared to proceed with the case pro se.  Of course, if an attorney offers to take the case, it is entirely Lee's decision whether to retain that attorney or not.

    SO ORDERED.

Dated:   November 29, 2022
           New York, New York

                                                JOHN P. CRONAN
                                        United States District Judge